UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

FRANCISCO AMEZCUA-PICAZO,

                  Petitioner,

     v.

PATRICK GLEBE,

                  Respondent.

CASE NO. C13-5580 RJB-JRC

REPORT AND RECOMMENDATION

NOTED FOR:
MAY 9, 2014

The District Court has referred this petition for a writ of habeas corpus to United States Magistrate Judge J. Richard Creatura. The Court's authority for the referral is 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR3 and MJR4. Petitioner seeks relief from a state conviction. Petitioner filed the petition pursuant to 28 U.S.C. § 2254.

Petitioner presents one properly exhausted ground for relief -- that petitioner's trial counsel was allegedly ineffective (Dkt, 3, p. 6). Petitioner's other grounds for relief were not properly exhausted and are now procedurally barred because a further petition would be untimely under state law. The only properly exhausted ground for relief, regarding ineffective assistance of counsel, does not warrant relief because the decision of the state court does not violate clearly established federal law. *See*, 28 U.S.C. § 2254 (d) (1). Therefore, the Court recommends that this petition be denied.

<u>BASIS FOR CUSTODY AND FACTS</u>

The Lewis County Superior Court sentenced petitioner to a total of three hundred and sixty months of incarceration after a jury found him guilty of two counts of first degree assault. The Washington State Court of Appeals summarized the facts surrounding the crime and trial as follows:

I.      Factual History.

On August 14, 2007, Joseph Haviland drove Aaron Malone and Robert Huey to the Logan District in Centralia so the three men could purchase marijuana. Haviland and Malone gave Huey money and dropped him off at the intersection of Kearny and B Streets. Huey intended to go to Brandon McDaniel's home on Kearny Street. While waiting for Huey, Haviland "drove around the block" by driving past McDaniel's house, through the alley behind McDaniel's house, and circling back onto Kearny Street. II Report of Proceedings (RP) at 18. He passed McDaniel's house again and proceeded to the next intersection. There, Haviland stopped at the stop sign, where a man was waiting to cross the street. The man was wearing a hooded sweatshirt with the hood up covering the upper part of his face; he approached the passenger side window and asked Malone's name. Malone saw the man raise a gun and yelled to Haviland to drive away. Haviland "hit the gas" and "ducked down and drove blindly." II RP at 24. Five to seven shots were fired at the vehicle; one of the shots hit Malone in the back. Huey was on McDaniel's front lawn when the shots were fired. After the shooting, he ran, following Haviland's vehicle. He passed a man in a hooded sweatshirt in the alley behind McDaniel's house.

Haviland and Malone met Huey at a nearby gasoline station so he could return their money. Malone asked Huey what had happened and Huey told Malone that the shooter was Amezcua-Picazo. Amezcua-Picazo was McDaniel's sister's boyfriend; she resided with McDaniel and other family members in the house on Kearny Street.

Malone was bleeding and in pain. Haviland drove Malone to the Chehalis Police Department, where Malone told the police that Amezcua-Picazo shot him. The police administered emergency aid and then an ambulance took Malone to the local hospital. Shortly after the shooting incident, police arrested Amezcua-Picazo and the State charged him with two counts of first degree assault.

At trial, the State produced evidence that Amezcua-Picazo was a member of a gang and that his street name was Cyclone. Centralia Police Sergeant Patrick Fitzgerald testified that the Little Valley Loquitos (LVL) gang "[wa]s the primary Hispanic gang in the community" at that time. II RP at 132. Centralia had another gang, The True Blue Crips (TBC), with primarily Caucasian members. Fitzgerald testified that there was animosity between the TBCs and the LVLs in Lewis County.

Huey and Malone both testified about an incident between Amezcua-Picazo and Malone that happened one to two months before the August 14 shooting. Malone was driving around with his friend Cory Hall, who is a member of the TBC gang, [court's footnote 1. Malone is not a gang member.] and another acquaintance, Ryan Smith. At that time, Hall was involved in "mass beefs" with members of the LVL gang. II RP at 168. Hall received a telephone call and the three men drove to McDaniel's house. "[Hall] jumped out of the car when [they] made it to the house and ended up smashing out the windows of ... [Amezcua-Picazo's] girlfriend's car." II RP at 169. Malone testified that he knew it was her car because "[Amezcua-Picazo's] name was tagged [footnote omitted] all over it." II RP at 169. "There were other people there and it was, I guess, a gang incident. . . . They were inside, some were out. But when it all happened, they came piling outside, that's when everybody took off." While Hall attacked the girlfriend's car, Malone "ducked down [in the back seat of Smith's car] trying to keep his face out of the scene." II RP at 170.

Centralia Police Officer Buddy Croy testified that, at approximately 10:20 pm on August 14, 2007, he and other police officers responded to a call reporting shots involving two vehicles at the 300 block of Kearny Street in Centralia. When the police reached the scene, they "checked with some people in the area [who] said they didn't hear anything." I RP at 80. Approximately 30 minutes later, Croy received another call from dispatch informing him that the Chehalis Police Department was in possession of a vehicle that had been "shot up with bullets." I RP at 80. Croy went to the Chehalis Police Department "because the vehicle description . . . was similar to what had been put out in the earlier call." I RP at 81. When he arrived, an aid unit was treating Malone. Croy testified that Malone identified the shooter as Amezcua-Picazo.

Croy and fellow Centralia Police Officer Douglas Lee interviewed Haviland at the Chehalis Police Station shortly after the shooting. Lee testified that Haviland was shaking and "definitely was very nervous, very scared." II RP at 69. "[Haviland] was concerned about repercussions against him and his safety for providing a statement to law enforcement in regard to the incident." II RP at 69. The day after the shooting, Centralia Police Detective Sergeant David Ross went to Haviland's house and showed him a photomontage. Haviland told Ross that he "didn't recognize any of the folks because [he] didn't see the guy's face" and that he could only tell Ross the basic build of the shooter. II RP at 35. Haviland "did pick somebody that [he] thought was around the basic build of the guy" but he did not circle or initial the photograph. II RP at 37. Ross testified that Haviland did not make a positive identification at that time.

On a subsequent day, Haviland went with his mother to the Centralia Police Department to look at the photomontage again. Centralia Police Officer Michael Lowery showed Haviland the same montage. After looking at it for approximately 10 seconds, Haviland identified Amezcua-Picazo and initialed his photograph. Haviland identified Amezcua-Picazo because "out of all the people

on that lineup that [photograph] looked closest to him." He testified that this was "[b]ased on what [he] did see." III RP at 95.

On August 16, Centralia Police Detectives Carl Buster and Beall [footnote omitted] drove Malone from the Chehalis Police Department to the Centralia Police Department for an interview. During the drive, they passed Amezcua-Picazo and another man on the street. Buster slowed the vehicle down because he thought the two men might be involved in another case he was investigating and the two men "started throwing gang signs" and "walking towards [the] car." III RP at 77-78. Buster testified that Malone "freaked out," "ducked down," and told Buster to "[']get out of here, get out of here.[']" Buster asked Malone "[']right now, yes or no, is that the guy who shot you[?'] [Malone] said, [']yes, just get me out of here.[']" III RP at 79. "[Malone] was visibly shaken, he was ducked down in the seat." III RP at 79-80. "[H]e was extremely afraid." III RP at 80. At the Centralia Police Station, Malone told Buster and Beall that Cyclone shot him. Malone told Buster and Beall that he "got that information [that Cyclone was the shooter] because Robbie Huey told [him] that." II RP at 197.

Malone testified that he could not see the shooter's face "because he was that close. His head was cutoff from [sic] the top of the car." II RP at 173. The State asked Malone whether he saw the man "when he was walking up to the car and before his head went out of [Malone's] view." II RP at 174. Malone answered, "No, he had his hood up, it was dark.... I got a vague look at him." II RP at 174-75.

[The State:] Did you know it was Cyclone or not at the time?

[Malone:] I don't know. I don't know to this day. I know when I did get in touch with [Huey] that he said it was Cyclone.
....
[The State:] So you didn't know for sure if it was Cyclone at that point when you were shot?

[Malone:] No.

[The State:] Did you think it was anybody other than Cyclone?

[Malone:] I didn't really think of anybody in particular. I thought, yes, there was a very good possibility because it was his girlfriend's car this whole thing had revolved around. He would be the only one to be upset about the situation.

II RP at 175-76.

Huey testified that, from his location in McDaniel's yard, he observed the man shoot at the vehicle but could not recognize the shooter. After the shots were fired, Huey ran after the vehicle.

> [Huey:] The shooter had ran [sic] from the corner through the yard up to the alleyway.
>
> [The State:] The alleyway as you drew in the diagram?
>
> [Huey:] The alleyway that goes behind [McDaniel's] house. We passed each other as we were running kind of, I didn't see the face.
>
> [The State:] Was the hoody up or down?
>
> [Huey:] The hoody was up. I couldn't tell who it was, but [I] could have been mistaken. If you didn't know him, I wouldn't guess who it was if I wouldn't have known the person, but I figured it was who it was.
>
> [The State:] Are you afraid to say it? Can you just say it?
>
> [Huey:] Yeah, it [wa]s Cyclone.

III RP at 30. On cross-examination, Huey testified:

> [Defense Counsel:] Did you see [Amezcua-Picazo] the night of the 14th?
>
> [Huey:] The night of the 14th, no.
>
> [Defense Counsel:] The night the shooting occurred, did you see my client?
>
> [Huey:] No.
>
> [Defense Counsel:] Isn't that what you told the police, you didn't see him that night?
>
> [Huey:] Yeah. I didn't see him before that, no.
>
> [Defense Counsel:] Did you see him at all the day of the 14th?
>
> [Huey:] No.

III RP at 30-31.

II.     Procedural History.

Before trial, the State filed a motion in limine to allow Fitzgerald's gang testimony. Amezcua-Picazo argued that, because neither Malone nor Haviland were members of a gang, the trial court should suppress any gang evidence. The State argued that the evidence was relevant to "witness credibility, the motive for the crime[, and] aspects of intimidation." I RP at 56. The trial court allowed the State to present the gang evidence, noting that the State could "establish their motive however they want to." I RP at 57. The court then stated:

> I don't see that necessarily that gang affiliations, at least here in Lewis County, has yet reached a level that hearing ["]gangs["] you find guilt. So . . . I'm going to balance the evidence pursuant to evidence rule 403. I'm going to find that its probative value outweighs the danger of unfair prejudice.

I RP at 57.

On the second day of trial, Amezcua-Picazo unsuccessfully moved "to suppress any identification from the photo montages [sic] from Mr. Haviland" on the basis of "irregularity in the way the photo montages [sic] were presented." II RP at 1, 4. He argued that, because Haviland was presented with the same photomontage twice, it was unnecessarily suggestive, since Haviland indicated the suspect was heavy set and "in this particular photo montage [sic] there [are] four skinny guys and two overweight guys." II RP at 5.

The jury found Amezcua-Picazo guilty of both counts of first degree assault and two special verdicts that he was armed with a firearm during both counts. . . .

(Dkt. 16, Exhibit 2, pp.1- 7).

PROCEDURAL HISTORY

Petitioner filed a direct appeal that raised four grounds for relief:

1.  The trial court violated the defendant's right to due process under Washington Constitution Article 1, § 3 and United States Constitution, fourteenth Amendment, when it entered Judgment of Conviction against him for two counts of first degree assault because substantial evidence does not support either charge.

2.  The trial court's admission of propensity for violence evidence to prove that the defendant acted in conformity with that violent propensity violated the defendant's right to a fair trial under Washington Constitution, Article 1, § 3, and United States Constitution, Fourteenth Amendment.

3.    The trial court's admission of unduly suggestive photo montage identification evidence violated the defendant's right to a fair trial under Washington Constitution Article 1, § 3, and United States Constitution Fourteenth Amendment.

4.    Trial counsel's failure to object when the state called upon one of the complaining witnesses to speculate as to the identity of the person who shot him, and when the state elicited inadmissible hearsay evidence of identification violated the defendant's right to effective assistance of counsel under Washington Constitution Article 1, § 22 and United States Constitution, Sixth Amendment.

(Dkt. 16, Exhibit 3 pp. ii-iii).  The Washington State Court of Appeals affirmed the Judgment and Sentence (Dkt. 16, Exhibit 2).  Petitioner filed a motion for reconsideration (Dkt. 16, Exhibit 5). The Washington State Court of Appeals denied petitioner's motion (Dkt. 16, Exhibit 6).

Petitioner filed a motion for discretionary review and raised the following grounds for relief:

1.    The trial court erred in its factual conclusions and law applied to if [sic] sufficient evidence supports the conviction on two counts of first degree assault;

2.    The trial court erred when it admitted evidence of alleged "gang affiliation" to support a contention of a perpensity [sic] to commit violence and impeach defendant's character even though defendant never took the stand;

3.    The trial court erred by admitting a prejudicially suggestive photo montage pointing to the defendant to enable witnesses to identify the wrong person, Mr. Amezcua-Picazo; and

4.    The trial level counsel committed ineffective assistance of counsel by the cumulative errors the Court of Appeals claims are forfeited by counsel's defects, but contradicts itself that it is not ineffective assistance.

(Dkt. 16, Exhibit 7, p. 1).  The Washington State Supreme Court denied review without comment (Dkt. 16, Exhibit 8).  Thus, the Washington State Court of Appeals issued the last reasoned decision on direct appeal.

1    Petitioner filed a personal restraint petition/motion to recall the mandate that was

2    signed by both himself and inmate Alvin Hegge attempting to act as a next friend

3    petitioner (Dkt. 16, Exhibit 10).  The Washington State Court of Appeals treated the

4    document as a motion to recall the mandate and placed it in the file without action

5    because petitioner did not show that the document had been properly served (Dkt. 16,

6    Exhibit 11).

7    Petitioner and inmate Hegge, again attempting to act as "next friend," then filed a

8    personal restraint petition (Dkt. 16, Exhibit 13). Petitioner argued ineffective assistance

9    of appellate counsel, that he was denied an adequate record, and that he was not allowed

10   to file a statement of additional facts (*id*.).

11   The Lewis County prosecutor objected to Mr. Hegge appearing in the action and

12   moved to dismiss him from the action and strike his declaration (Dkt. 16, Exhibits 15 to

13   17).  The Commissioner of the Washington State Court of Appeals agreed with the

14   prosecutor's office, and struck the declaration and personal restraint petition with Mr.

15   Hegge's signatures on them from the record (Dkt. 16, Exhibit 18).  The Commissioner

16   gave petitioner ninety days to file an amended petition.

17   Rather than complying with the Court's order, petitioner moved to modify the

18   Commissioner's ruling and the state responded (Dkt. 16, Exhibits 19 to 21).  The Washington

19   State Court of Appeals denied petitioner's motion and when no amended personal restraint

20   petition was filed the matter was dismissed (Dkt. 16, Exhibit 22, and 23).  Petitioner then moved

21   to modify the order dismissing his petition (Dkt., 16, Exhibit 24).  The Washington State Court

22   of Appeals also denied this motion (Dkt. 16, Exhibit 25).

23

24

Petitioner sought review of both the order directing him to file an amended petition and the ruling dismissing the matter after he had failed to file the amended petition (Dkt. 16, Exhibits 26 and 29). The Washington State Supreme Court Commissioner consolidated petitioner's motions and denied review holding that the Washington State Court of Appeals properly dismissed Mr. Hegge from the action and properly dismissed the action after petitioner failed to file an amended petition (Dkt. 16, Exhibit 30). Petitioner moved to modify the Commissioner's ruling, (Dkt. 16, Exhibit 31), and the Washington State Supreme Court denied the motion without comment (Dkt. 16, Exhibit 32). Thus, petitioner never filed an amended personal restraint petition.

Petitioner filed his federal habeas corpus petition and raised five grounds for relief. Petitioner argues:

GROUND ONE:

Petitioner Picazo was deprived of his constitutional right of effective assistance of trial counsel who failed to protect his First, Fourth, Fifth, Sixth and Fourteenth Amendment rights guaranteed and protected by the United States Constitution.

GROUND TWO:

Petitioner Picazo was deprived of his constitutional right to raise all potentially reversible issues through effective assistance of State direct appeal counsel in violation of the First, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

GROUND THREE:

Petitioner Picazo was deprived of his State created and United States Constitutionally protected right to file Statement on Additional Grounds as part and parcel of State direct appeal rights, in violation of the First and Fourteenth Amendments to the United States Constitution.

1    GROUND FOUR:

2        Petitioner Picazo was deprived of his constitutional right to be provided
     copies of the court files, transcripts and records underlying his conviction being
3    challenged so that he could identify and present all potentially reversible issues in
     Statement of Additional Grounds and initial collateral attack, in violation of the
4    First, Fifth, Sixth, Eighth and Fourteenth Amendments of the United States
     Constitution as well as State statutory and constitutional law.
5
     GROUND FIVE:
6
         Petitioner Picazo was deprived of State created and federal
7    constitutionally protected right of appointment of effective assistance of counsel
     for initial collateral attack in violation of the First, Fifth, Sixth and Fourteenth
8    Amendments of the United States Constitution.

9    (Dkt. 3 p. 6).   Respondent concedes that petitioner has exhausted his first ground for

10   relief and argues the other grounds were not properly exhausted and are procedurally

11   barred (Dkt. 16 pp. 10-11).

12                   EVIDENTIARY HEARING NOT REQUIRED

13       Evidentiary hearings are not usually necessary in a habeas case.  According to 28 U.S.C.

14   §2254(e)(2) (1996), a hearing will only occur if a habeas applicant has failed to develop the

15   factual basis for a claim in state court, and the applicant shows that: (A) the claim relies on (1) a

16   new rule of constitutional law, made retroactive to cases on collateral review by the Supreme

17   Court that was previously unavailable, or if there is (2) a factual predicate that could not have

18   been previously discovered through the exercise of due diligence; and (B) the facts underlying

19   the claim would be sufficient to establish by clear and convincing evidence that but for

20   constitutional error, no reasonable fact finder would have found the applicant guilty of the

21   underlying offense.  28 U.S.C. §2254(e)(2) (1996).

22       Petitioner's claims rely on established rules of constitutional law.  Further, there are no

23   factual issues that could not have been previously discovered by due diligence.  Finally, the facts

24

REPORT AND RECOMMENDATION - 10

1  underlying petitioner's claims are insufficient to establish that no rational fact finder would have

2  found him guilty of the crime.  Therefore, this court concludes that an evidentiary hearing is not

3  necessary to decide this case.

4  <u>STANDARD OF REVIEW</u>

5  Federal courts may intervene in the state judicial process only to correct wrongs of a

6  constitutional dimension. *Engle v. Isaac*, 456 U.S. 107 (1983).  28 U.S.C. § 2254 explicitly

7  states that a federal court may entertain an application for writ of habeas corpus "only on the

8  ground that [petitioner] is in custody in violation of the constitution or law or treaties of the

9  United States."  28 U.S.C. § 2254(a) (1995).  The Supreme Court has stated many times that

10  federal habeas corpus relief does not lie for mere errors of state law.  *Estelle v. McGuire*, 502

11  U.S. 62 (1991); *Lewis v. Jeffers*, 497 U.S. 764 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984);

12  A habeas corpus petition shall not be granted with respect to any claim adjudicated on the

13  merits in the state courts unless the adjudication either: (1) resulted in a decision that was

14  contrary to, or involved an unreasonable application of, clearly established federal law, as

15  determined by the Supreme Court; or (2) resulted in a decision that was based on an

16  unreasonable determination of the facts in light of the evidence presented to the state courts.  28

17  U.S.C. §2254(d).   Further, a determination of a factual issue by a state court shall be presumed

18  correct, and the applicant has the burden of rebutting the presumption of correctness by clear and

19  convincing evidence.  28 U.S.C. §2254(e)(1).

20  <u>DISCUSSION</u>

21  1.    Failure to exhaust grounds for relief two through five.

22  Grounds for relief two through five were not part of petitioner's direct appeal or his

23  motion for discretionary review from the denial of his direct appeal (Dkt. 16, Exhibits 3 and  7).

24

All of these grounds for relief were raised in the personal restraint petition that was struck by the Washington State Court of Appeals because Mr. Hegge signed the pleadings (Dkt. 16, Exhibit 18).  Petitioner did not file an amended personal restraint petition and he abandoned these claims.

A state prisoner seeking habeas corpus relief in federal court must exhaust available state relief prior to filing a petition in federal court. As a threshold issue the court must determine whether or not petitioner has properly presented the federal habeas claims to the state courts. 28 U.S.C. § 2254 (b)(1) states, in pertinent part:

> (b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted unless it appears that:
> (A)   the applicant has exhausted the remedies available in the courts of the state; or
> (B)   (i)  there is an absence of available state corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

To exhaust state remedies, petitioner's claims must have been fairly presented to the state's highest court.  *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Middleton v. Cupp*, 768 F.2d 1083, 1086 (9th Cir. 1985) (petitioner "fairly presented" the claim to the state Supreme Court even though the state court did not reach the argument on the merits).

A federal habeas petitioner must provide the state courts with a fair opportunity to correct alleged violations of federal rights.  *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (*citing Picard*, 404 U.S. at 275).  Petitioner must have exhausted the claim at every level of appeal in the state courts.  *Ortberg v. Moody*, 961 F.2d 135, 138 (9th Cir. 1992).  It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state law claim was made.  *Duncan*, 513 U.S. at 365-66 (*citing Picard*, 404 U.S. at 275 *and*

*Anderson v. Harless*, 459 U.S. 4 (1982)).  Petitioner must present the claims to the state's highest court, even if such review is discretionary.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Larche v. Simons*, 53 F.3d 1068, 1071 (9th Cir. 1995).  A petitioner must present the claims to the state's highest court based upon the same federal legal theory and factual basis as the claims are subsequently asserted in the habeas petition.  *Hudson v. Rushen*, 686 F.2d 826, 830 (9th Cir. 1982), *cert denied* 461 U.S. 916 (1983); *Shiers v. California*, 333 F.2d 173, 176 (9th Cir. 1964) (petitioner failed to exhaust the claim that the state trial court improperly admitted evidence because petitioner never presented such a claim to the state court).  Specifically, petitioner must apprise the state court that an alleged error is not only a violation of state law, but a violation of the Constitution.  *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995).  Vague references to broad constitutional principles such as due process, equal protection, or a fair trial are not enough.  *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999), *cert. denied*, 528 U.S. 1087 (2000) (petitioner's statement that the state court's cumulative errors denied him a fair trial was insufficient to specifically articulate a violation of a federal constitutional guarantee); *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999).  Petitioner must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle petitioner to relief.  *Gray v. Netherland*, 518 U.S. at 162-163.

Petitioner did not present grounds for relief two through five in his direct appeal. The Court concludes that grounds for relief two through five were not properly exhausted. Respondent concedes that petitioner's first ground for relief is exhausted (Dkt. 15, p.10).

2.      Procedural bar.

Petitioner completed his direct appeal by filing the appeal and a motion for discretionary review.  Petitioner abandoned his personal restraint petition by not filing an amended petition

1    when ordered to do so.  Respondent argues that petitioner's conviction became final July 26,

2    2010 when the State Court of Appeals issued its mandate (Dkt. 15, Exhibit 9).  Petitioner had one

3    full year to file a collateral challenge and he failed to do so.  *See* RCW 10.73.090(1).

4    Respondent argues that petitioner is procedurally barred from returning to state court to attempt

5    to exhaust grounds for relief two through five (Dkt. 15, p. 15).

6        "In all cases in which a state prisoner has defaulted his federal claims in state court

7    pursuant to an independent and adequate state procedural rule, federal habeas review of the

8    claims is barred unless petitioner can demonstrate cause for the default and actual prejudice as a

9    result of the alleged violation of federal law, or demonstrate that failure to consider the claims

10   will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750

11   (1991).

12       To show cause in federal court, petitioner must show that some objective factor, external

13   to the defense, prevented petitioner from complying with state procedural rules relating to the

14   presentation of petitioner's claims.  *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991) (*citing*

15   *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Examples which may satisfy "cause" include

16   "interference by officials" that makes compliance with state procedural rules impracticable, "a

17   showing that the factual or legal basis for a claim was not reasonably available to counsel", or

18   "ineffective assistance of counsel."  *McCleskey*, 499 U.S. at 494 (*citing Murray*, 477 U.S. at

19   488).

20       Petitioner in this case cannot show cause.  Petitioner simply failed to comply with the

21   Washington State Court of Appeals order to file an amended personal restraint petition without

22   Mr. Hegge's signature on it.  Petitioner abandoned his claims and instead chose to challenge the

23   orders denying Mr. Hegge next friend status and the order directing petitioner to file the

24

1    amended petition.  Thus, petitioner failed to exhaust grounds for relief two through five by not

2    complying with a state court order and he cannot show cause and prejudice.

3         In his traverse, petitioner argues that he is not procedurally barred because Washington's

4    law is not an independent and adequate state rule (Dkt. 19, p. 2).  Petitioner argues that a rule

5    that one inmate may not sign pleadings with another inmate is a violation of federal law.  (Dkt.

6    19, p. 2-3).  Petitioner mischaracterizes or misapprehends the procedural rule that is at issue.

7    The procedural rule that respondent argues prevents petitioner from returning to state court is

8    Washington State's time limit for collaterally challenging a final conviction, RCW 10.73.090(1).

9    *See* (Dkt. 15, p. 15).  Petitioner's argument concerning next friend status and who may sign a

10   personal restraint petition is a red herring.

11        Petitioner has not shown cause or prejudice for his failure to exhaust his state claims.  In

12   the absence of cause or prejudice petitioner would have to show actual innocence to excuse his

13   procedural default.  A petitioner who would be otherwise procedurally barred from bringing a

14   federal habeas claim may be able to obtain habeas review if petitioner can come forward with

15   sufficient proof of his actual innocence of the crime charged and convicted.  This would bring

16   him "within 'the narrow class of cases...implicating a fundamental miscarriage of justice.'"

17   *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995) (*quoting McCleskey v. Zant*, 499 U.S. 467, 494

18   (1991)).

19        Plaintiff has made no showing that he was actually innocent of the crimes for which he

20   was charged and convicted.  Petitioner has failed to demonstrate that there has been a

21   fundamental miscarriage of justice.  Therefore, the Court concludes that petitioner has no

22   exception that would prevent procedural default.  The Court recommends dismissing grounds for

23   relief two through five as procedurally barred.

24

3.     Ground for relief one, ineffective assistance of trial counsel.

On direct appeal petitioner raised the following issue:

> Trial counsel's failure to object when the state called upon one of the complaining witnesses to speculate as to the identity of the person who shot him, and when the state elicited inadmissible hearsay evidence of identification violated the defendant's right to effective assistance of counsel under Washington Constitution Article 1, § 22 and United States Constitution, Sixth Amendment.

(Dkt. 16, Exhibit 3 p. iii).  Petitioner in his motion for discretionary review reworded the claim to state:

> The trial level counsel committed ineffective assistance of counsel by the cumulative errors the Court of Appeals claims are forfeited by counsel's defects, but contradicts itself that it is not ineffective assistance.

(Dkt. 16, Exhibit 7. p.1).  The Washington State Court of Appeals considered this claim on the merits and held that counsel was not ineffective for failing to object to the identification testimony because the testimony was equivocal and actually helpful to defendant (Dkt. 16, Exhibit 2, pp. 16-20).  This was the last reasoned opinion on the issue because the Washington State Supreme Court denied review without comment (Dkt. 16, Exhibit 8).

The Washington State Court of Appeals concluded that counsel's decision not to object to certain identification testimony was trial strategy.  Counsel's decision prevented the state from strengthening the testimony regarding identification.  The cases cited by the Washington State Court of Appeals identify the proper standard of review for the Sixth Amendment ineffective assistance claim raised by petitioner (Dkt. 16, Exhibit 2, pp 17-18).

In order to establish that petitioner was ineffectively assisted by counsel, petitioner must show that counsel's representation fell below an objective standard of reasonableness and that the deficient performance affected the result of the proceeding.  *Strickland v. Washington*, 466

U.S. 668, 686 (1984).  There is a strong presumption that counsel's conduct falls within the wide

range of reasonable professional assistance, "the defendant must overcome the presumption that,

under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Id.* at

689 (*quoting Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  In order to demonstrate prejudice,

defendant must show there is a reasonable probability that but for counsel's unprofessional

errors, the result would have been different.  *Strickland*, 466 U.S. at 694.  Our "[r]eview of

counsel's performance is highly deferential and there is a strong presumption that counsel's

conduct fell within the wide range of reasonable representation."  *Ortiz v. Stewart*, 149 F.3d 923,

932 (9th Cir. 1998) (*citing Hensley v. Crist*, 67 F.3d 181, 184 (9th Cir. 1995)).

Further, pursuant to the Antiterrorism and Effective Death Penalty Act (AEDPA), it is

not enough for a petitioner to convince this court that the state court applied *Strickland*

incorrectly; rather, petitioner must show that the state court applied *Strickland* in an objectively

unreasonable manner.  28 U.S.C.A. § 2254 (d) (1); *see Harrington v. Ritcher*, __ U.S.__ 131 S.

Ct. 770, 785, 178 L. Ed. 2d 624 (2011); *Bell v. Cone*, 535 U.S. 685 (2002).

Petitioner fails to make any showing that the state court applied the legal standard

incorrectly.  Not objecting to the equivocal identifications made by the witnesses prevented the

state from rehabilitating their testimony and may have been trial strategy.  Petitioner fails to

show counsel was ineffective or that the state court rulings resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established federal law, as

determined by the Supreme Court; or (2) resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented to the state courts.  28

U.S.C. §2254(d).

Petitioner attempts to expand the scope of his habeas corpus petition by arguing that his ineffective assistance of counsel claim encompasses "far more claims of ineffective assistance of counsel than were raised on State Court direct appeal." (Dkt. 19, pp.1-2).  To the extent that petitioner is attempting to raise other claims, the Court has determined that they are procedurally barred.  The Court recommends finding that petitioner's ineffective assistance of counsel claim is without merit and recommends dismissal of this petition.

<u>CERTIFICATE OF APPEALABILITY</u>

Petitioner seeking post-conviction relief under 28 U.S.C.§ 2254 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge.  A certificate of appealability may issue only if petitioner has made "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2).  Petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Pursuant to this standard, this Court concludes that petitioner is not entitled to a certificate of appealability with respect to this petition.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

//

//

1  imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on May

2  9, 2014, as noted in the caption.

3      Dated this 14th day of April, 2014.

4

5                                        J. Richard Creatura
                                         United States Magistrate Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24